NUMBER 13-08-488-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

JUANITA GONZALEZ, Appellant,

 


v. 


HELEN RENEE GALVAN, Appellee.

 


On appeal from the 430th District Court 

of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Justice Vela
 

 Appellant, Juanita Gonzalez, appeals a trial court order denying her motion for a
protective order against appellee, Helen Renee Galvan. By two issues, Gonzalez urges
that she established as a matter of law that family violence was going to occur in the future
and that the trial court's finding that family violence was not likely to occur in the future was
against the great weight and preponderance of the evidence. We affirm.

I. Background

 Gonzalez and Galvan were in a five year relationship that ended unhappily. 
Gonzalez testified that on February 29, 2008, Galvan attacked her when the two met to
return a diploma that was still in Galvan's possession after the relationship ended. 
Gonzalez introduced photographs showing where she had been scratched and bruised,
as well as photographs of her car that showed it had sustained damage. She testified that
Galvan had inflicted these injuries upon her and was responsible for the damages to her
car. 

 Gonzalez introduced two other instances which she argues showed a history of
discordant behavior between the two. First, Gonzalez testified that in October 2007, after
their break-up, Galvan entered her apartment and an altercation between the two ensued.
Second, Gonzalez claimed that while the two were still together, she was hospitalized
because Galvan hit her with a curtain rod several times on her leg. At that time, she lied
to the healthcare professionals, telling them that she had fallen and cut herself in order to
protect Galvan from getting arrested. She testified that she lied because Galvan was on
probation. Gonzalez testified that Galvan continued to threaten her and that she still
feared her. 

 On cross examination, Galvan introduced letters into evidence written by Gonzalez
after the two had ended their relationship. The letters contained expressions of love. 
Gonzalez admitted that things she wrote in the letter were not consistent with being afraid
of Galvan. Galvan's counsel also introduced telephone records into evidence that showed
that the two had been communicating prior to the incident made the basis of the motion
for protective order. The evidence showed that Gonzales called Galvan two times on
February 12, six times on February 13, seven times on February 14, once on February 16,
once on February 17, nine times on February 18, and six times on February 21. Gonzalez
said she also became aware that Galvan's car window had been broken two days after the
incident in question, but she denied involvement in that incident, despite suggestions from
Galvan's counsel that she might be responsible. 

 Officer Rene Navarro testified that she responded to a call from Juanita Gonzalez
in October, 2007. Gonzalez told Navarro that an assault had occurred. Navarro observed
scratch and bite marks on Gonzalez. On cross examination, Officer Navarro stated that
she did not believe her testimony constituted the complete story because she had heard
from only one of the parties. Counsel for Galvan introduced a police report from that
evening which showed that Galvan was claiming that she was being kicked and beaten by
Gonzalez.

 Hector Bautista of the Hidalgo County Sheriff's office took Gonzalez's statement
regarding the February 29th incident. He observed injuries on her. He said that Galvan
had been arrested for assault against Gonzalez. 

 Galvan did not testify at the hearing, invoking her Fifth Amendment protection 
against self incrimination. See U.S. Const. amend. V. She had been arrested on the
morning of the hearing for protective order based upon conduct that occurred on February
29, 2008. 

 At the end of the hearing, the court stated that it believed family violence had
occurred, but the trial court did not believe that Gonzalez had established, to the court's
satisfaction, that such violence would occur in the future. The trial court reasoned: 
"[W]e're not talking about young, immature people here. We're talking about people who
are self-employed and able to leave." The court further stated: "Separate, people. Get
away from one another and knock it off before one of you ends up in prison because that's
where this is going." The trial court admonished both parties and urged them to stop. 
Thereafter, the court denied the protective order.

II. Standard of Review

 In this case, we apply a legal and factual sufficiency review of the evidence.
Cements v. Haskovec, 251 S.W.3d 79, 84 (Tex. App.-Corpus Christi 2008, no pet.);
Schaban-Maurer v. Maurer-Schaban, 238 S.W.3d 815, 823 (Tex. App.-Ft. Worth 2007,
no pet.). When the trial court acts as a fact finder, we review its findings under the legal
and factual sufficiency standards. In re Doe, 19 S.W.3d 249, 253 (Tex. 2000). 

 The fact finder is the sole judge of the credibility of the witnesses and the weight to
be assigned to their testimony. Canal Ins. Co. v. Hopkins, 238 S.W.3d 549, 557 (Tex.
App.-Tyler 2007, pet. denied) (op. on reh'g). The fact finder is free to believe one witness
and disbelieve another, and reviewing courts may not impose their own opinions to the
contrary. Id. Accordingly, reviewing courts must assume that the fact finder decided all
credibility questions in favor of the verdict if a reasonable person could do so. Id. If a
reasonable finder of fact could have done so, we must assume that the finder of fact chose
what testimony to disregard in a way that was in favor of the verdict. Id. A fact finder may
disregard even uncontradicted and unimpeached testimony from disinterested witnesses
where reasonable. Id.


 III. Applicable Law

 A trial court shall render a protective order if, after a hearing, it finds that family
violence has occurred and is likely to occur in the future. Tex. Fam. Code Ann. § 81.001
(Vernon 2008). Evidence that a person has engaged in abusive conduct in the past allows
an inference that the person will continue violent behavior in the future. Schaban-Mauer,
238 S.W.3d at 824; see In re Epperson, 213 S.W.3d 541, 543 (Tex. App.-Texarkana 2007,
no pet.). "Oftentimes, past is prologue; therefore, past violent conduct can be competent
evidence which is legally and factually sufficient to sustain the award of a protective order." 
In re Epperson, 213 S.W.3d at 544. The cases clearly allow, but do not necessarily
require, the trier of fact to make the inference that a person will continue violent behavior
in the future because of past violence. See Clements, 251 S.W.3d at 87-88; see also In
re J.A.T., No. 13-04-00477-CV, 2005 WL 1981497, at *1 (Tex. App.-Corpus Christi Aug.
18, 2005, no pet.) (mem. op.).

IV. Analysis

 Here, the trial court stated on the record that family violence had occurred, but the
trial court obviously did not believe that Galvan's past acts necessarily translated into
evidence that she would commit future acts of violence. The court found, as a fact, that
the evidence did not support the "findings required under Section 86.001 [sic] to issue a
protective order." While the trial court's order does not seem to be in accord with its
observation at the end of the hearing, namely, that someone was going to end up in prison,
we may not substitute our judgment for that of the trial court, who had the opportunity to
view the demeanor of both Gonzalez and Galvan first-hand. 

 Examining the evidence that was before the trial court, we cannot conclude that
Gonzalez established as a matter of law that family violence would occur in the future or
that the trial court's determination was against the great weight and preponderance of the
evidence. The trial court had before it testimony of the alleged incidents of violence
against Gonzalez. The first was arguably only one side of the story. Gonzalez testified
that she lied about the second to the health professionals. Conceivably the trial court
found her recount of the incident not credible. The trial court chose to believe Gonzalez's
testimony regarding Galvan's past behavior, but obviously the court did not believe that
Galvan was likely to commit future violent acts. The trial court obviously concluded that
there would be no future acts of violence.

 The trial court apparently did not believe Gonzalez's testimony, perhaps because
Gonzalez continued to telephone Galvan, even after earlier violent attacks had allegedly
occurred. Because a trial court is in the best position to observe a witness's demeanor,
it is given latitude to believe or disbelieve a witness's testimony, particularly when the
witness is interested in the outcome. In re Doe 4, 19 S.W.3d 322, 325 (Tex. 2000);
Salaymeh v. Plaza Centro, LLC, 258 S.W.3d 236, 240 (Tex. App.-Houston[1st Dist.] 2008,
no pet.). It was, therefore, the province of the trial court to determine the weight to be
given Gonzalez's testimony. 

 In this case, the trial court was in the best position to observe the witnesses
demeanor and the weight to be given the testimony. We will not second guess the trial
court with regard to the weight and credibility it afforded Gonzalez's testimony. 



V. Conclusion

 We overrule appellant's issues one and two and affirm the trial court's decision
to deny Gonzalez's motion for protective order. 



 ROSE VELA

 Justice



Memorandum Opinion delivered and 

filed this 23rd day of April, 2009.